UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America,    :
                             :
                             :
         v.                  :          Case No. 2:06-CR-16-1
                             :
Waldo Yago.                  :
                             :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 33)

Defendant Waldo Yago moves to suppress statements he
made following his arrest on September 29, 2005.  He claims
law enforcement agents interrogated him before obtaining a
valid Miranda waiver.  On April 9, 2007, Chief Judge
Sessions referred the motion for a report and
recommendation.  An evidentiary hearing was held on April
19, 2007.  For the reasons set forth below, I recommend that
the Court DENY Yago's motion.

Factual Findings

On September 29, 2005, Yago was arrested in Berlin,
Vermont for drug trafficking and transported to the Barre
City Police Department.  ATF Special Agent Thomas Jusianiec
and Corporal Jamie Palmisano of the Barre Police Department
were the primary investigators in a joint federal and state

investigation of firearms and drug trafficking between New York City and Vermont.  Approximately 30-45 minutes after Yago's arrest, Jusianiec and Palmisano joined Yago in an interview room at the Barre Police station.  Jusianiec initiated the interview with Yago by describing to him the history of the joint investigation and its findings to date. Jusianiec did not ask Yago any questions during his recitation of the investigation's history.  Reading from an ATF issued <u>Miranda</u> card (Gov't Exhibit 1),  Jusianiec advised Yago of the <u>Miranda</u> warnings as follows:

> You have the right to remain silent.

> Anything you say can be used against you in court.

> You have the right to consult with an attorney and to have them present during questioning.

> If you cannot afford an attorney, one will be appointed to represent you prior to any questioning.

> Do you understand your rights?

> Are you willing to waive these rights and talk to me?

Jusianiec testified that after he asked Yago, "Do you understand your rights?", Yago responded, "what can I say, I fucked up."  Jusianiec then paused before asking Yago if he was "willing to waive these rights and talk to [him]?"  To

2

this, Yago stated, "I fucked up."  Jusianiec repeated the waiver question and Yago shook his head while repeating, "I fucked up."  Unable to get a response to the question of whether he was willing to waive his rights and talk to him, Jusianiec ended the interview.

Palmisano was present during the interview and wrote a report of the events that evening.  His report indicated that Yago's first statement, "what can I say . . ." occurred after Jusianiec asked whether Yago was willing to waive his rights and talk to him.  Although Palmisano has a clear memory of that day, he was not certain that Yago's first statement, "what can I say . . ." came after Jusianiec asked him whether he understood his rights or after the waiver question.  In addition, Palmisano's report noted that the interview concluded because Yago did not sign the waiver. Palmisano clarified in his testimony that the state-issued Miranda cards include a signature line for a waiver and that he had assumed incorrectly in his report that Jusianiec's card was the same.  He testified that Vermont law requires Miranda waivers be recorded and that the Barre Police Department effectuates that requirement with the Miranda cards.

Discussion

Yago requests suppression of his statements to Jusianiec and Palmisano because he made them without validly waiving his Miranda rights. (Paper 33).  A threshold issue for the Court, however, is whether the circumstances triggered Yago's Miranda rights to require a valid waiver. Accordingly, before reaching the waiver issue, the Court must determine whether Yago was subject to custodial interrogation.

"Under Miranda v. Arizona, police may not interrogate a suspect who has been taken into custody without first warning the suspect that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." U.S. v. Herbin, No.CRIM.204CR93, 2005 WL 2789047, at *4 (D.Vt. Oct. 26, 2005)(Sessions, C.J.)(quoting Miranda v. Arizona, 384 U.S. 436, 479 (1966))(internal quotation omitted).  The rights enumerated in Miranda are only available when a defendant is (1) in custody (2) while being interrogated, known as custodial interrogation.  Dickerson

4

v. United States, 530 U.S. 428, 434-35 (2000); Tankleff v.
Senkowski, 135 F.3d 235, 242-43 (2d Cir. 1998).  "[C]ustody
exists for Miranda purposes if a reasonable person in that
position would 'have felt he or she was not at liberty to
terminate the interrogation and leave.'" Tankleff, 135 F.3d
at 243 (quoting Thompson v. Keohane, 516 U.S. 99, 111
(1995)).  Here, Yago was under arrest and had been
transported to the Barre City Police Department by law
enforcement officers.  Under these circumstances, he was
clearly in custody.

For Miranda rights to apply, Yago must have also been
subject to police questioning or other "compelling
influences."  Miranda, 384 U.S. at 478.  Volunteered
statements without police questioning do not trigger Miranda
rights.  Id.

> Confessions remain a proper element in law
> enforcement.  Any statement given freely and
> voluntarily without any compelling influences is,
> of course, admissible in evidence.  The
> fundamental import of the privilege while an
> individual is in custody is not whether he is
> allowed to talk to the police without the benefit
> of warnings and counsel, but whether he can be
> interrogated . . . Volunteered statements of any
> kind are not barred by the Fifth Amendment and
> their admissibility is not affected by our holding
> today.

Miranda, 384 U.S. at 478.  Miranda also "does not protect
spontaneous utterances."  Stanley v. Wainwright, 604 F.2d
379, 382 (5th Cir. 1979); United States v. Buckner, 417 F.
Supp. 2d 240 (S.D.N.Y. 2005) (holding Fifth Amendment right
against self-incrimination was not violated by admission of
spontaneous statements made by defendant prior to any police
questioning).

Interrogation means questioning reasonably likely to
elicit an incriminating response.  Rhode Island v. Innis,
446 U.S. 291 (1980).  It is not limited, however, to direct
questioning by police.  In Innis, the Supreme Court
explained that Miranda can also apply to the "functional
equivalent" of interrogation, defined as including "any
words or actions on the part of the police (other than those
normally attendant to arrest and custody) that the police
should know are reasonably likely to elicit an incriminating
response from the suspect."  Innis, 446 U.S. at 301.  Such
actions could include "psychological ploys, such as to
'posi[t]' 'the guilt of the subject,' to 'minimize the moral
seriousness of the offense,' and 'to cast blame on the
victim or on society."  Id. at 299 (quoting Miranda, 446
U.S. at 450).

Yago contends that he was improperly interrogated after hearing his Miranda warnings, but before he waived his rights.  The government argues that the questioning never amounted to interrogation because Yago's statements came as Jusianiec was trying to get through the full recitation of Yago's rights and ascertain whether he would waive them. Moreover, the government contends that Yago's statements amounted to an implied waiver of his Miranda rights.

Once Miranda warnings have been given and a suspect indicates in any manner that he does not wish to be interrogated, the police may not question him.  Miranda, 384 U.S. at 473-74; see also Campaneria v. Reid, 891 F.2d 1014, 1021 (2d Cir. 1989) (once an accused in custody unequivocally invokes the right to remain silent, interrogation must stop).  "The suspect not the interrogator, is given control over `the time at which questioning occurs, the subjects discussed, and the duration of the interrogation.'"  Campaneria, 891 F.2d at 1021 (quoting Michigan v. Mosley, 423 U.S. 96, 103-04 (1975)). The police may only resume questioning if the suspect's right to cut off questioning was "scrupulously honored." Mosley, 423 U.S. at 103-04.  An exception to the Miranda

rule "is permitted when the invocation of the right to remain silent is ambiguous or equivocal.  In such instances, narrow questions are permitted for the strictly limited purpose of clarifying an ambiguous request." <u>Campaneria</u>, 891 F.2d at 1021; <u>Anderson v. Smith</u>, 751 F.2d 96, 103 (2d Cir. 1984) ("[W]hen it is unclear whether the suspect has indeed invoked his rights, the interrogator can ask questions designed to clarify whether or not the defendant intends to talk.").

The key factual dispute in this case is whether Yago's first statement was made after Jusianiec asked him if he understood his rights or after he asked him if he was willing to waive those rights and discuss the case.  Yago conceded at the hearing that if the Court finds that the first statement was made after Jusianiec asked Yago if he understood his rights, the statement would not be in response to interrogation, <u>Miranda</u> would not apply, and no waiver would be needed to admit Yago's statement.

This Court finds Jusianiec's memory of the timing and sequence of Yago's statements more reliable than Palmisano's report because Jusianiec was the one reading the warnings. Moreover, Palmisano testified that the point he wanted to

convey in his report was that Yago did not waive his <u>Miranda</u>
rights or agree to talk, not the specific timing and
sequence of the statements.  Accordingly, the Court finds
that the first statement, "What can I say . . ." occurred
after Jusianiec asked Yago if he understood his rights.

However, even assuming Yago's first statement was in
response to Jusianiec's waiver question, the statement was
not made in response to interrogation.  The questions fell
within the <u>Miranda</u> exception because they were "designed to
clarify whether or not" Yago wanted to discuss the case and
were not reasonably likely to elicit an incriminating
response.  <u>Innis</u>, 446 U.S. at 301; <u>Anderson</u>, 751 F.2d at
103.  Yago's first statement, "what can I say, I fucked up,"
did not unequivocally invoke or waive his <u>Miranda</u> rights.
In order to "scrupulously honor" the defendant's rights,
Jusianiec needed more information to clarify whether a
waiver of <u>Miranda</u> existed before proceeding with further
questioning.  <u>United States v. Ramirez</u>, 79 F.3d 298, 304 (2d
Cir. 1996); <u>Campaneria</u>, 891 F.2d at 1021.  Given the timing
of the questions (immediately after advising Yago of his
rights), Jusianiec was not trying to trick Yago into making
an incriminating statement.  Rather, he was questioning Yago

for the limited purpose of determining whether he wished to invoke or waive his <u>Miranda</u> rights.   Accordingly, Jusianiec was not interrogating Yago when he posed his questions. Since Yago's statements were not the product of interrogation, they should not be suppressed.   The issue of whether Yago validly waived his <u>Miranda</u> rights is thus moot.

## Conclusion

For the reasons set forth above, I recommend that Yago's motion to suppress (Paper 33) be DENIED.

Dated at Burlington, in the District of Vermont, this 27th day of April, 2007.


/S/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

_____

_____